# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WENDY HELMKE
AND BRENDA SANDER,

      Plaintiffs,

v.

SANOFI U.S.,

      Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of the transaction or occurrence alleged in the Complaint.

## **COMPLAINT AND JURY DEMAND**

Plaintiffs Wendy Helmke and Brenda Sander ("Plaintiffs"), by and through their attorneys, HURWITZ LAW PLLC, states the following for their Complaint against Defendant Sanofi U.S. ("Defendant"):

1

## INTRODUCTION

1. Mses. Helmke and Sander were unceremoniously terminated after requesting religious accommodations to be exempt from the COVID-19 vaccine. Despite the Equal Employment Opportunity Commission instructing employers to "assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite and issued baseless denials of Plaintiffs' religious accommodation requests. Both were exemplary employees who had served Defendant for a combined 40 years. Both worked remotely, where accommodations from the COVID-19 vaccine mandate do not pose any undue hardship on Defendant.

## PARTIES AND JURISDICTION

2. Plaintiff Helmke is an individual residing in the City of Manchester, County of Washtenaw, State of Michigan

3. Plaintiff Sander is an individual residing in the City of Woodland Park, County of Teller, State of Colorado.

4. Defendant is a company headquartered in Bridgewater Township, New Jersey.

5. Plaintiffs' claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Therefore, this Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. This Court also has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 over Plaintiff's claims under the Elliot-Larsen Civil Rights Act ("ELCRA") because Defendant is now, and at all relevant times was, a corporation fully organized under the laws of the state of New Jersey, and Plaintiff Helmke is now, and at all relevant times was, a citizen domiciled in Michigan, and Plaintiff Sander is now, and at all relevant times was, a citizen domiciled in Colorado.

7. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(e), as it is the district in which Plaintiff Helmke resides.

8. Plaintiffs filed religious discrimination and retaliation charges against Defendant with the Equal Employment Opportunity Commission on July 20, 2022. Plaintiff Helmke received her Right to Sue letter from EEOC within the last 90 days. Plaintiff Sander has not received a "right to sue' letter from the EEOC at this time, but her Title VII claims are properly brought before this Court pursuant to Title VII's single filing (or "piggybacking") rule.

## FACTUAL ALLEGATIONS

9. Plaintiff Helmke was employed by Defendant as a Project Leader. Plaintiff worked for Defendant for nearly 20 years prior to her termination on February 25, 2022.

10. Plaintiff Helmke's position was fully remote.

11. Plaintiff Sander was employed by Defendant as a Regional Study

Manager. Plaintiff was employed by Defendant from May 2004 until her termination on January 21, 2022.

12. Plaintiff Sander's position was fully remote.

### Defendant's Vaccination Requirement

13. On November 12, 2021, Defendant announced its COVID-19 Vaccination Policy (the "Policy").

14. The Policy told employees to "obtain a Covid-19 vaccine as a condition of continued employment."

15. The Policy dictated that employees who were not fully vaccinated (*i.e.*, two doses of the Moderna or Pfizer vaccines, or one dose of the Johnson & Johnson/Jansen vaccine) by the identified deadline for compliance were "subject to separation from Sanofi US."

16. Defendant elicited accommodation requests and ultimately engaged in an insufficient interactive process with employees who sought accommodation.

### Plaintiff Helmke's Accommodation Request

17. When asked, "[w]hat is the specific sincerely held religious belief, observance or practice for which you are seeking accommodation?" Plaintiff Helmke responded:

> In accordance with the teachings in the Christian faith and my sincerely held religious beliefs, I believe every life is sacred. The Bible clearly states, God sees life from the moment of conception and loves us from that point

onward. I believe the use of fetal cells lines that originated from an aborted fetus/baby at any stage is gravely immoral. I believe that man has the right to free will and as stated throughout the Bible, my body is a temple created in God's perfect image. It is my right and desire to keep my body free from potentially dangerous substances.

Supporting Bible Verses:
- "Thus says the Lord who made you and formed you from the womb who will help you.." (Isaiah 44:2)
- "Now the Word of the Lord came to me saying, before I formed you in the womb I knew you, and before you were born I consecrated you.." (Jeremiah 1:4-5)
- The Sixth Commandment states, "You shall not murder." (Exodus 20:13)
- "Or do you not know that your body is a temple of the Holy Spirit who is in you, whom you have from God, and that you are not your own?" (1 Corinthians 6:19-20)

18. When asked to "[d]escribe the conflict between the religious belief, observance or practice and Sanofi US's requirement to obtain a Covid-19 vaccine," Plaintiff Helmke answered:

My direct objection is with vaccine that use aborted fetal issue or cell lines. The currently approved COVID-19 vaccines were developed using fetal cell lines during research, efficacy testing, manufacturing, and/or production. These fetal cell lines descend from abortions. Even if these are generations from the original aborted fetus/baby, they still come from abortions. This does not align with my moral conscience and deeply held religious belief, that all life is sacred. Therefore, I must wholeheartedly refuse the COVID-19 vaccines. I will not consent to receive any vaccine derived in any way from a method that starts or is tested, developed, manufactured, with an aborted fetus/baby.

Additionally, I also need to follow my convictions according to my belief and God's Word. The Bible tells us our bodies are not our own, but a temple for God's Holy Spirit. Thus, taking the COVID-19 vaccine requires me to put something potentially dangerous with a limited long-

5

term safety profile into my body. God gave us free will, I believe I should have a choice whether or not to receive any type of vaccination that is not consistent with my moral compass. Inoculating my body with a vaccine that was developed using aborted fetal tissue or cell lines would be detrimental to my spiritual well-being.

19. Plaintiff Helmke even proposed reasonable accommodations to the COVID-19 vaccine, stating:

> For the past 7 years (2 years as a contractor and 5 years as a headcount), I have worked remotely from my home office as a Clinical Project Leader in the US CSU with extremely rare travel for meetings or site visits. Face to face meetings typically occurred about once a year. Prior to the pandemic, my role required on-site quality control visits at a small percentage of institutions. At this time, these visits are now conducted virtually and may continue as virtual visits.
>
> When meetings or visits are required, I would agree to participate virtually. Over the past 1.5 years, we have all adapted to working remotely and utilizing virtual technology to adequately perform our job requirements. If travel is required where a virtual meeting does not meet the needs of business, I would agree to COVID-19 testing, social distancing, and masking if required at that time.

20. On December 17, 2021, Defendant sent Plaintiff Helmke a denial letter.

21. This letter stated, "providing you an exemption to the Covid-19 vaccine requirements would constitute an undue hardship due to the nature of your position, which, among other things, require you to be able to enter a Sanofi US site and/or participate in-person at Sanofi US external events and meetings, which is limited to only vaccinated individuals."

22. After receiving this denial, Plaintiff Helmke asked for an explanation on how accommodating her poses an "undue burden" for Defendant. On December 21, 2021, Plaintiff Helmke wrote to Defendant's Employee Relations the following:

> I reviewed the letter and would like clarification how providing an exception to the Covid-19 requirement constitutes an "undue hardship to the nature and essential functions of my position."
>
> Please see the attached Clinical Project Leader job requirements according to a job listing posted in Workday as of Dec. 2021. There is no mention of travel as a requirement for this position. Additionally, I am considered a "remote" employee. I have performed the essential functions of my job as a "remote" employee since accepting the CPL position. The previously required quality control visits are no longer the responsibility of the CPL. This task is now performed by ICON functional line managers. Therefore, I am no longer required to travel to sites/institutions. Regarding Sanofi US in-person meetings, these typically occur only once a year (pre-Covid) and sometimes occur remotely depending on the yearly budget. As mentioned in my request for accommodation, I will agree to wearing a mask and testing prior to any in-person meetings or participate virtually where video conferencing, break-out-rooms, etc. can be used. There are typically employees joining these meetings remotely for many other reasons. Other than the yearly meeting, I am not aware of any other in-person meetings that would occur.
>
> Lastly, data supports that the COVID-19 vaccines do not prevent transmission but reduce the severity of symptoms. I sincerely hope you reconsider my accommodation.

23. Defendant failed to respond, despite the EEOC instructions: "[i]f the employer denies the employee's proposed accommodation, the employer should

explain to the employee why the preferred accommodation is not being granted." Guidance at L.5.

24. Plaintiff Helmke appealed her accommodation request, but was denied, and was told that this determination was final.

25. On January 10, 2022, Plaintiff Helmke disclosed her ongoing battle with breast cancer and explicated her personal medical objections to the vaccine, writing the following to Employee Relations:

> Sanofi prides itself on being a "health journey partner," supporting people as they navigate their individual health journeys. For the past 14 years, I have dedicated my time and efforts to supporting Sanofi's mission of improving the lives of people through innovative healthcare solutions. About 4 years ago I was diagnosed with breast cancer. As you can imagine, this as an extremely difficult time for me and my family where we put our faith in God to get me through…
>
> Although I am in remission, my return to "normal" life hasn't been so normal. I am constantly plagued with anxiety and fear over the potential return of my cancer and live with this distress every day. To compensate with these over whelming [sic] emotions, I made many drastic lifestyle changes. I fully embraced a more holistic and natural lifestyle to help reduce and mitigate any contact or exposure to carcinogens. This decision was best for me to ensure my body continues to be able to health and prevent exposure to anything that could potentially aid in recurrence of my cancer.

26. In response, Defendant simply wrote:

> We understand that these are personal and difficult decision [sic] for employees.

> The denial reason was outlined in your letter.
>
> Sanofi US has made the decision that it will require all employees to be vaccinated (subject to the accommodation process), regardless of work location. Due to continuing health and safety concerns, unvaccinated employees are not allowed in our Sanofi buildings therefore the hardship is that you may be required at some point to be onsite to conduct your role, or attend meetings, and need to be vaccinated to do so. Your appeal has been reviewed and the decision is final.

27. Defendant relied on the hypothetical hardship that "at some point" Plaintiff Helmke could work on premises.

28. Meanwhile, Defendant's treatment towards Ms. Helmke caused severe anxiety and worsened her mental health.

29. On January 31, 2022, Plaintiff Helmke submitted paperwork pursuant to the Family Medical Leave Act ("FMLA"), which was signed by her primary care physician, Dr. Mary Greiner.

30. Dr. Greiner determined that Plaintiff Helmke would be incapacitated from January 26, 2022, until at least March 31, 2022.

31. Defendant approved Ms. Helmke's dates of FMLA leave.

32. However, Defendant took adverse action against her while she was on protected FMLA leave, terminating her employment on February 25, 2022.

### Plaintiff Sander's Religious Accommodation Request

33. Plaintiff Sander seeks to make all decisions in his everyday life,

especially those regarding medical decisions, through prayer and by reading the Holy Bible.

34. Plaintiff Sander submitted her responses to Defendant's religious accommodation questions, which espoused her sincerely held *bona fide* religious beliefs precluding vaccination.

35. Plaintiff Sander obtained a letter signed by her priest, which affirmed her religious beliefs. However, because Defendant didn't engage in the interactive process, she did not provide it.

36. On December 13, 2021, Defendant's third-party agent called Plaintiff Sander to interrogate her on the accommodation request.

37. Plaintiff Sander asked if she could provide an email with her written responses, and Defendant's agent refused.

38. There was no prior notice about the call, and Plaintiff Sander was experiencing physical manifestations of extreme stress.

39. Plaintiff Sander began to cry and asked if she could submit answers by email. Once again, Defendant refused.

40. On December 14, 2021, the following day, Defendant denied Plaintiff Sander's religious accommodation request, claiming, "it could not substantiate the existence of a specific sincerely held religious belief, observance, or practice that is in conflict with obtaining a Covid-19 vaccine."

41. Defendant terminated Plaintiff Sander on January 21, 2022.

42. Prior to her termination, Plaintiff Sander had been promoted.

43. Plaintiff Sander's End of Year Review for 2021, written a month prior to her termination on December 10, 2021, by Associate Director and Clinical Research Operations Manager Siobhan Gallagher provides:

> Brenda successfully led the charge on all Dupilumab Medical Affairs studies in 2021! As Lead CPL/SME in this area, Brenda was responsible for all Medical Affairs Dupi study milestones. She worked starting new studies and then training CPL replacements to hand off to support strategic delivery of many studies at once in our resource challenged environment. Brenda provided excellent support for CPLs, CPAs and CRAs assigned to work on this important program. Her team expressed they [sic] gratitude for her support and guidance on many occasions! On top of that, she took responsibility for the direct management of senior stakeholders (Project Leaders and Senior Managers outside CSU) for Dupilumab with very positive feedback. Brenda was able to step in and cover for me as needed without missing a step….Brenda is a strong leader with much to offer Sanofi.
>
> Brenda regularly demonstrates the Play to Win CSU behaviors (Stretch, Take Action, Act for Patient and Customers, Think Sanofi First.) She clearly demonstrated a willingness to "Stretch" by taking on new Dupilumab projects and by successfully weathering many study and team transitions during 2021. Brenda is open to new ways of working, and does not wait to "Take Action" to address issues. Brenda partnered well with ICON while acting quickly to address concerns. She is passionate about Sanofi's mission and the patients we serve. Brenda is invested in the success of her projects, in the CSU and Sanofi! I was pleased to have her as part of my team!

44. Plaintiff Sander was an excellent performer, as expressed in her annual review, and worked completely remotely, yet Defendant terminated her.

45. The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

46. No such "bilateral cooperation" occurred during Defendant's review of either Plaintiffs' accommodation requests, nor did Defendant ever acknowledge that a mandate requiring remote employees to receive a vaccine defies logic.

47. The United States Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework."  U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).  "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

48. Prior to their terminations, Plaintiffs loyally served Defendant as exemplary employees with no prior reprimands.

49. Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

50. The U.S. Equal Employment Opportunity Commission ("EEOC")

advises employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

51. An individual's testimony about his or her belief "must be given great weight" and is enough to demonstrate sincerity. *Seeger*, 380 U.S. at 184 (1965).

52. Plaintiffs' religious convictions are shown not only by their continued refusal to vaccinate against COVID-19 even in the face of termination, losing their livelihoods in the process.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

53. The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). The employer bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978).

54. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975).

55. Defendant did not claim undue hardship when denying Plaintiffs'

requests for accommodation.

56. Defendant is unable to even allege undue hardship because both Plaintiffs were fully remote employees.

## COUNT I
## Violation of Elliott-Larsen Civil Rights Act ("ELCRA")
## Religious Discrimination–Failure to Accommodate and Disparate Treatment

57. Plaintiffs restate the foregoing paragraphs as set forth herein.

58. An employer shall not discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of the individual's religion. MCL 37.2202(1)(a).

59. Plaintiffs can establish a *prima facie* case of religious discrimination by showing that (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of these beliefs; and (3) they suffered an adverse employment action for "failing to comply with the conflicting employment requirement." *Tepper v. Potter,* 505 F.3d 508, 514 (6th Cir. 2007).

60. Plaintiffs hold sincere religious beliefs that conflict with Defendant's vaccine requirement.

61. For their failure to comply with Defendant's vaccine requirement, Defendant terminated both Plaintiffs.

62. Defendant evaded any sort of bilateral cooperation.

63. Plaintiffs should have been given the opportunity to continue to work

14

remotely.

64. Plaintiffs also assert a disparate treatment claim. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

65. Plaintiffs espoused religious beliefs and are therefore members of a protected class.

66. Defendant directly discriminated against Plaintiffs by terminating them after they stated their sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

67. Defendant allowed other unvaccinated employees without Plaintiffs' same religious beliefs to be exempted from Defendant's vaccine mandate policy.

68. It is undisputed that Plaintiffs were qualified for their positions.

69. Plaintiffs were treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

70. Plaintiffs were terminated and replaced with employees of different religious beliefs.

71. Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests for accommodation.

72. Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the denial of their requests.

73. Plaintiffs have been required to employ the services of an attorney.

74. Defendant's actions were intentional and/or reckless.

## COUNT II
### Violation of Elliott-Larsen Civil Rights Act ("ELCRA")
### Religious Discrimination–Disparate Treatment

75. Plaintiffs restate the foregoing paragraphs as set forth herein.

76. Plaintiffs hold sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

77. Plaintiffs informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

78. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct

evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

79. Defendant directly discriminated against Plaintiffs based on termination after they espoused sincerely held religious beliefs that conflicted with Defendant's policy.

80. Defendant allowed other unvaccinated employees without Plaintiffs' religious beliefs to be exempted from Defendant's vaccine mandate policy.

81. Plaintiffs sincerely held religious beliefs qualify them as members of a protected class.

82. Plaintiffs were qualified for the position.

83. Plaintiffs were treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

84. Plaintiffs were terminated and replaced with employees of different religious beliefs.

85. Defendant also terminated Plaintiffs based on Defendant's own

17

subjective standard of religiosity, thus directly discriminating against Plaintiffs' unique sincerely held spiritual beliefs.

86. EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

87. The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

88. Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

89. In discovery, Plaintiffs will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

90. Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Attorneys' fees and costs; and

e. Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: May 22, 2023

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WENDY HELMKE
AND BRENDA SANDER,

       Plaintiffs,                Case No.

v.

                                      Hon.

SANOFI U.S.,

       Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs, Wendy Helmke and Brenda Sander, by and through their attorneys, HURWITZ LAW PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                                       Respectfully Submitted,

                                                       HURWITZ LAW PLLC

                                                       /s/ *Noah S. Hurwitz*
                                                       Noah Hurwitz (P74063)
Dated: May 22, 2023                         Attorney for Plaintiffs